THE STATE, EX REL. SOLOMON, v. BUSHONG, SUPT.

(No. 975—Decided May 16, 1949.)

*Messrs. Durbin & Navarre,* for petitioner.

*Mr. Herbert S. Duffy,* attorney general, and *Mr. Walter R. Hill,* for respondent.

GUERNSEY, P. J. Max Solomon filed his petition for a writ of habeas corpus in this court, in which petition he alleges he is unlawfully restrained of his liberty by R. E. Bushong, superintendent of Lima State Hospital.

He alleges further that he was committed to the hospital and the custody of Bushong under the provisions of Sections 13451 19, 13451-20, 13451-21, 13451-22, 13451-22*a* (121 Ohio Laws, 443) and 13451-23 (118 Ohio Laws, 690), General Code, formerly known as the Ascherman Act.

In his petition he bases what right he may have to be released from such restraint, solely upon the ground that such statutory provisions are unconstitutional for the following reasons:

1. That they are a violation of the Constitution of the United States of America.

2. That they are a violation of the Constitution of the state of Ohio.

3. That they limit the right of the writ of habeas corpus.

4. That they violate and are contrary to previous existing statutes of the state of Ohio.

5. That they deprive a defendant of due process of law in that:

(a) A defendant may be restrained of his liberty for a longer term than meted out by a court of law.

(b) They define otherwise illegal hearsay evidence as prima facie evidence under certain conditions.

(c) They delegate legislative and judicial authority to persons or commissions not authorized by law.

(d) They limit the time of reapplication for release, under certain conditions.

In his return to the writ of habeas corpus, Bushong represents that he has Max Solomon in his custody and has had him in his custody since February 3, 1948, by virtue of a certain mittimus issued by the Court of Common Pleas of Cuyahoga County, a copy of which mittimus is attached to the return and by reference made a part thereof.

The material part of the mittimus above mentioned is a copy of a journal entry of the Common Pleas Court of Cuyahoga County, which entry reads as follows:

"The State of Ohio Cuyahoga County ss. In the Court of Common Pleas. January Term, 1948

"State of Ohio v. Max Solomon — Indictment for felonious assault with counts. No. 57,566.

"January 29th, 1948.

"Now comes the prosecuting attorney on behalf of the state of Ohio and the defendant being brought into court in custody of the sheriff; thereupon, the defendant retracts his plea of not guilty heretofore entered and for plea to said indictment saith he is guilty.

"The defendant herein having been heretofore referred to the psychiatric clinic for examination and report, this cause came on for hearing before this court under Section 13451-20 of the General Code to determine whether or not said defendant, Max Solomon, who is awaiting sentence on the charge of felonious assault with count, under Section 12423-1 of the General Code of Ohio, providing for imprisonment in

the penitentiary for not less than one (1) year, nor more than ten (10) years, is mentally ill.

"The court having referred the defendant to the psychiatric clinic for examination into the mental condition of the defendant, the said clinic having filed its report with the court and a certified copy of same having been served on the said defendant as provided by law, upon hearing and full consideration of the clinic report and other evidence, the court finds that the said defendant, Max Solomon, is mentally ill and a mentally deficient offender, as defined in Section 13451-20, General Code.

"It is, therefore, ordered, adjudged and decreed that the said defendant, Max Solomon, is a mentally deficient offender as defined in Section 13451-20 of the General Code, and defendant is sentenced to the Ohio State Penitentiary; in accordance with a departmental order of the Department of Public Welfare of the state of Ohio, the defendant is ordered committed indefinitely to the Lima State Hospital, during the continuance of which indefinite commitment, the execution of the sentence to the Ohio State Penitentiary is suspended as provided under Section 13451-20 of the General Code of Ohio."

On the trial of this case no evidence was introduced except testimony offered by the petitioner as to the definition of certain words and phrases used in the statute in question, which did not in any respect vary from the definitions of such words and phrases incorporated directly or by reference in the statute.

In his brief filed herein the petitioner makes the contention, not specified in his petition, that he is entitled to be released from custody for the reason that the Common Pleas Court, in its journal entry of commitment having found the petitioner was mentally ill, was without authority, at the same time and in the

same entry, to act upon the petitioner's plea of guilty, find him guilty and sentence him to indefinite commitment.

We shall first consider these contentions and then consider, in the order in which they appear in the petition, the reasons specified by the petitioner in his petition, for claiming the statutes under which he was committed are unconstitutional.

As will be noted from the return of Bushong, the petitioner was convicted of the offense prescribed in Section 12423-1, General Code.

Under the provisions of Section 13451-20, General Code, the trial court must refer for examination, all persons convicted under Section 12423-1, General Code, as well as certain other designated sections of the General Code, to the department (Department of Public Welfare) or to a state facility designated by the department, or to a psychopathic clinic approved by the department, or to three psychiatrists.

Section 13451-20, General Code, among other things, further prescribes:

"The department, clinic, or psychiatrists shall make a careful examination of such person and furnish to the court a report in writing of its or their finding as to the mental condition of the person at the time of examination, together with such recommendations, suggestions, and opinions as may be helpful to the court, which report shall also contain the names and addresses of the parties making the examination. Such report shall be a public record and become a part of the files in the case but not be spread at large upon the journal. A certified copy of such report shall be served upon such person and his attorney of record within three days after the filing thereof with the court. If any psychiatric examiner or psychologist not on the staff of any such psychiatric clinic or the de-

partment or a state facility designated by the department is so appointed, the cost thereby incurred shall be determined by the court and allowed and taxed as costs and paid in the same manner as witness fees in criminal cases.

"The court shall conduct a hearing thereon not earlier than ten days nor later than thirty days after the service of such copies of the report. Both the state and such person or his guardian or next friend shall have the right to appear in person or by counsel at such hearing, to subpoena, examine and cross-examine the examiners making the report regardless of the part of the state in which the examiners may live, and to produce witnesses, both lay and expert, as to the mental condition of such person. In the event and to the extent that no subpoenas are issued for the examiners to appear at the hearing, the report or such part of it as was prepared by the examiners for whom no subpoena was issued, shall constitute prima facie evidence.

"If upon consideration of such report and such other evidence as shall be submitted, the court shall find that such person is mentally ill as defined in Section 1890-19 of the General Code or is a mentally deficient offender or a psychopathic offender as defined in Section 13451-19 of the General Code, the court shall enter such finding on the records and shall impose the appropriate sentence for the offense of which the person was convicted; and at the same time the court shall enter an order of indefinite commitment of such person to the department of public welfare, during the continuance of which, the execution of sentence shall be suspended. Thereupon such person shall be sent to an appropriate institution designated by the department. * * * Every order of indefinite commitment hereunder shall show the offense of which such person was con-

victed and the minimum and maximum penalties therefor. Certified copies of said order and the reports of the examiners, unless submitted by the department, shall be sent to the department. Every order of indefinite commitment shall constitute a final order. The provisions of law relating to motions for new trial, bail and appeal on questions of law shall be applicable to such cases.

"Any finding under the provisions of this act that a person is mentally ill, a mentally deficient offender, or a psychopathic offender, shall constitute a final order." (121 Ohio Laws, 444.)

Section 1890-19, General Code, prescribes:

" 'Mental illness,' 'mentally ill,' 'mental disease,' 'mental disorder,' shall mean an illness which so lessens the capacity of the person to use self-control, judgment and discretion in the conduct of his affairs and social relations as to make it necessary or advisable for him to be under treatment, care, supervision, guidance or control. The terms shall be construed to include 'lunacy,' 'unsoundness of mind,' 'insane,' and also cases in which such lessening of capacity for control is caused by such excessive addiction to narcotics, sedatives or stimulants as to make it necessary for him to be under treatment, care, supervision, guidance or control. * * *" (121 Ohio Laws, 430.)

Section 13451-19, General Code, among other things, prescribes:

"When used in this act, unless the context otherwise requires:

"(1) The term 'mentally deficient offender' shall mean any person who is adjudged mentally deficient or feeble-minded, as this term is defined in Section 1890-97 of the General Code, who exhibits criminal

tendencies and who, by reason thereof is a menace to the public." (121 Ohio Laws, 443.)

Section 1890-97, General Code, prescribes:

"The term 'mentally deficient' or 'feeble-minded,' as used in this act, refers to any person whose intellectual development has been retarded from birth or from an early age and whose intellectual and social capacity is below normal for his chronological age to such an extent that he lacks sufficient control, judgment and discretion to manage himself and his affairs, and who by reason of such deficiency, for his own welfare or the welfare of others of the community, requires supervision, guidance, care or control." (121 Ohio Laws, 440.)

A person has sufficient mentality to be tried for a criminal offense if he is of sufficient soundness of mind to understand and appreciate the nature of the charge against him, to comprehend his situation, and is mentally capable of furnishing his counsel the facts essential to the presentation of a proper defense. *State, ex rel. Townsend, v. Bushong, Supt.*, 146 Ohio St., 271, 65 N. E. (2d), 407.

While the copy of the journal entry incorporated in the return, by virtue of which the petitioner is held in custody, discloses that the court found "that the said defendant, Max Solomon, is mentally ill and a mentally deficient offender, as defined in Section 13451-20, General Code," the adjudication of the court is "That the said defendant, Max Solomon, is a mentally deficient offender as defined in Section 13451-20 of the General Code."

It will also be noted that "mental illness," as defined in Section 1890-19, General Code, is used in the broad sense as comprehending all types of mental diseases and mental deficiencies.

The finding of the court in its journal entry, therefore, constitutes a general finding that the petitioner was mentally ill, comprehending any type of mental illness or mental deficiency, and a specific finding that the petitioner was a mentally deficient offender, and the adjudication in conformity with the provisions of Section 13451-19, General Code, that the petitioner was a mentally deficient offender, definitely fixes the status of the petitioner as a mentally deficient offender, within the purview of Section 13451-20, General Code, irrespective of the prior finding that he was mentally ill.

There are many types and degrees of mental illness or insanity, and a "mentally deficient offender," as defined in the above-quoted statutes, may be, and, in the absence of an adjudication to the contrary, is presumed to be, sufficiently sound in mind to understand and appreciate the nature of the charge against him, and to comprehend his situation, and to be mentally capable of furnishing his counsel the facts essential to the presentation of a proper defense, and this presumption attended him at all times during his arraignment, plea, trial, and sentence.

For the foregoing reasons, petitioner's additional contention, made in his brief but not specified in his petition, is without merit.

REASONS 1, 2, 3 AND 4 ASSIGNED IN THE PETITION, FOR CLAIMING THE STATUTES UNCONSTITUTIONAL

Reasons 1 and 2 constitute merely general statements that the statutes violate the Constitution of the United States and of the state of Ohio, but were apparently intended to prescribe that such violation is in the particulars mentioned in reason 5 and will, therefore, be considered and discussed under the head-

ing of reason 5, in the same manner as if reason 5 charged the statutes violated the United States and state Constitutions and deprived the petitioner of due process of law in the particulars specified under this heading.

Reason number 3 will be considered and discussed in connection with reason number 5 (b).

Reason number 4 simply charges that the statutes in question violate and are contrary to previous existing statutes which, if true, would not constitute a ground for holding them unconstitutional.

### REASON 5 (A)

Sections 13451-22 and 13451-22*a*, General Code, provide as follows:

"Sec. 13451-22. Whenever a person committed under the provision of Section 13451-20 of the General Code has recovered or his condition appears to have improved to such an extent that he no longer needs the special custody, care or treatment of such institution, the superintendent of the institution shall report the facts to the commissioner of mental hygiene, who may order such further examination of the inmate as may be advisable. If satisfied that the inmate has recovered or is sufficiently improved to justify such action, the director of public welfare upon the written recommendation of the commissioner, shall issue one of the following orders:

"1. If the person has been confined for a period less than the maximum sentence for the offense of which he was convicted, the order shall terminate the indefinite commitment. Thereupon the sentence which was suspended under the provisions of Section 13451-20 of the General Code shall forthwith go into effect and the person shall be transferred to the appropriate penal or reformatory institution. Thereafter he shall

be subject to the jurisdiction of the pardon and parole commission as provided by law. For the purposes of reckoning the eligibility of such person for parole or discharge, the time of confinement under an order of indefinite commitment in accordance with the provisions of Section 13451-20 of the General Code, shall be counted as time served with good behavior under the applicable sentence.

"2. If the person has been confined for a period equaling or exceeding the maximum sentence for the offense of which he was convicted, the order shall provide that the person be placed on trial visit under supervision. If, after a suitable period of supervision on trial visit, the director, upon the written recommendation of the commissioner, is satisfied that such person no longer requires supervision, the indefinite commitment and the sentence suspended under the provisions of Section 13451-20 shall be terminated and such person shall be discharged from the legal control and custody of the department of public welfare." (121 Ohio Laws, 446.)

"Sec. 13451-22a. At any time after the expiration of the period equivalent to the maximum sentence for the offense of which he was convicted and sentence suspended, any person committed under the provisions of this act may make application, personally, by counsel or by guardian or next friend, for his release to the court by which he was committed. The court shall grant a hearing upon such application, at which hearing it shall give consideration to reports and recommendations of the department of public welfare and to such evidence as the applicant may present. No subsequent application may be heard upon behalf of any person whose application is denied, except by leave of court, within one year after the date of the last pre-

ceding hearing. If, upon any hearing provided by this section, the court finds that such person is not then mentally ill, a mentally deficient offender or a psychopathic offender, as the case may be, the court shall order the department of public welfare to discharge such person and the sentence suspended under the provisions of Section 13451-20 shall be terminated.'' (121 Ohio Laws, 446.)

It will be noted that under the provisions of such sections a person committed pursuant to the provisions of Section 13451-20, General Code, and not released prior to the expiration of the period equivalent to the maximum sentence for the offense of which he is convicted, through proceedings had by the superintendent of the institution to which he is committed, the commissioner of mental hygiene, and director of public welfare, pursuant to the provisions of Section 13451-22, General Code, may, pursuant to the provisions of Section 13451-22a, be retained in the custody of the institution to which he is committed, until after the expiration of a period equivalent to the maximum sentence for the offense of which he was convicted, and may then be released only by the court making such commitment, upon the terms and conditions set forth in Section 13451-22a, General Code.

The latter provision has the effect of vesting in the court making the commitment, exclusive continuing jurisdiction of the release of the person committed, to be exercised only in the manner prescribed in such section.

Petitioner in this case, as shown by the return of Bushong, has not been in custody for a period less than the minimum and much less than the maximum of the sentence for the offense of which he was convicted.

Whether he may be released prior to the expiration of such maximum is solely within the discretion of the public officers designated in Section 13451-22, General Code, to be exercised in the manner therein prescribed, and such discretion is not subject to control by the courts.

The question as to whether the statutes are unconstitutional by reason of prescribing that a person committed may, under the conditions specified therein, be retained in custody subsequent to the expiration of a period equivalent to the maximum sentence for the offense of which he was convicted, as well as the question as to whether the committing court may, under the Constitution, retain jurisdiction to order the release of a person committed, upon the terms and conditions set forth in Section 13451-22a, to the exclusion of another court exercising jurisdiction in habeas corpus, can be raised and determined only after the expiration of a period equivalent to the maximum sentence for the offense of which the person committed was convicted, since until the expiration of such period any right he may have to be released upon the expiration of such period is not, prior to such time, affected or infringed by such provisions.

As the petitioner has not been in custody for such period, he is not now in position to question the constitutionality of the statutes in the respects mentioned.

### REASON 5 (B)

Under the provisions of Section 13451-20, General Code, at the hearing on the report of the examiners appointed by the court the offender, or his guardian or next friend has the right to appear in person, or by counsel, and to subpoena, examine and cross-examine the examiners making the report. regardless of the part of the state in which the examiners may live, and to produce witnesses, both lay and expert, as to the

mental condition of such person, and it is only in the event and to the extent that no subpoenas are issued for the examiners to appear at the hearing, the report or such part of it as was prepared by the examiners for whom no subpoena was issued, shall constitute prima facie evidence. As such reports constitute prima facie evidence only in the event the offender fails to avail himself of the rights preserved to him by the statute to subpoena, examine and cross-examine the examiners making such reports, his constitutional rights are fully preserved and protected. Such provision constitutes a reasonable and proper exercise of legislative power, and does not violate either the state or United States Constitution.

### Reason 5 (c)

The authority delegated to the superintendent of the institution to which the offender has been committed, and the commissioner of mental hygiene and the director of public welfare is limited to the time the offender is restrained of his liberty during the period of his commitment and not beyond the expiration of the period equivalent to the maximum sentence for the offense of which he was convicted, and is, therefore, ministerial and not legislative or judicial in character, and the delegation of such authority does not violate any constitutional provision.

### Reason 5 (d)

Whether the statutes are unconstitutional by reason of limiting the time of reapplication for release, under the conditions set forth in Section 13451-22a, General Code, is subject to determination only after the expiration of the period equivalent to the maximum sentence for the offense of which the petitioner was convicted. As the petitioner has not been in custody for such time, such question cannot be raised or determined.

While it is established by the decision in the case of *Yutze* v. *Copelan, Chief of Police,* 109 Ohio St., 171, 142 N. E., 33, 32 A. L. R., 1048, that habeas corpus will not lie to test the constitutionality of a statute or ordinance, in favor of the one who has been convicted, where the criminal court wherein conviction was obtained had jurisdiction or power to determine the question of constitutionality, the constitutional questions raised in the instant case relate to statutes providing for the commitment of the offender, and not to the statutes under which the conviction was obtained, and some of them are of such a character that they could not be raised and would not be subject to review on appeal upon questions of law from the judgment of conviction, so we have passed upon them in this case.

For the reasons mentioned, the petitioner will not be discharged on the writ of habeas corpus issued herein and will remain in the custody of Bushong, superintendent, under the above-mentioned commitment.

*Judgment accordingly.*

MIDDLETON and JACKSON, JJ., concur.